## No. 11,268.

### THE STATE EX REL. J. BENJAMIN CHANDLER PRAYING FOR WRITS OF HABEAS CORPUS, CERTIORARI AND PROHIBITION.

1. Where subsequently to verdict and prior to sentence doubts arise as to the sanity of the person convicted the court has the right, upon the suggestion of the district attorney, to cause an investigation to be made on that subject.
2. Authority to that effect can be found in Sec. 1768 of the Revised Statutes, if direct authority for that purpose be necessary.
3. The judge is authorized to engraft upon the criminal proceedings in his court, not yet closed, the proceeding provided for in that section, and in the absence of a direct mode of procedure being exacted, to mould it to correspond with the analogous methods of proceeding resorted to for the purpose of the trial of special issues.

*Thomas F. Maher* for the Relator.

*John J. Finney*, District Attorney, for the Respondents.

The opinion of the court was delivered by

NICHOLLS, C. J. Relator avers that he was indicted by the grand jury of the parish of Orleans on the charge of libel, and tried before a jury of the panel in Section " A " of the Criminal District Court for the said parish and found guilty of the crime of libel on the 5th day of August, 1892. That relator, through his attorney, appointed

by the court, made a motion for a new trial, which was taken under advisement. That after his conviction, upon the suggestion of the assistant district attorney, a commission of medical experts was appointed by the court to examine into the mental condition of relator, who made a report, a copy of which he annexed to his petition. That the report caused all further proceedings to be suspended, and relator was released on bond furnished to the criminal sheriff in the sum of $500. That relator was notified to appear before the said Section " A " of the court on the 29th of March, 1892, at the suggestion of the law officers of the State to again have his mental condition inquired into by a jury of the panel. That the attorney representing relator filed an exception to the aforesaid proceedings, which was overruled by the court, and thereupon he filed a bill of exceptions to the ruling of the court, which was granted, and relator on the verbal suggestion of the assistant district attorney to the judge of Section " A," without any proof, either oral or written, that the going at large of relator would be dangerous to the safety of the citizens of the State or the peace of the State, relator was placed under a $10,000 bond, in default of which he is now confined in the parish prison of the parish of Orleans under a capias issued to the criminal sheriff of said parish. That the bond of $10,000 fixed by the judge is excessive and in violation of Art. 9 of the Constitution of the State, and that the suggested inquiry into the mental condition of relator before a jury of the panel is illegal and not authorized by any law of this State.

In view of the premises he prayed that a writ of *habeas corpus* issue to the criminal sheriff of the parish of Orleans, in whose custody as keeper of the parish prison relator now is, commanding him to bring relator before this court with the cause of his detention and commitment, and that a writ of *certiorari* issue directed to the judge of Section " A," commanding him to send to this court a certified copy of the proceedings in the case of the State of Louisiana vs. J. Benjamin Chandler in order that their validity may be ascertained, and that the said judge be enjoined from proceeding any further in that case until the judgment of this court in the premises; that the writ of *habeas corpus* be made absolute, and that he be discharged from custody and for general relief and for such other relief as this court is competent to give him.

The criminal sheriff produced the body of the prisoner and returned that he detained him under the capias referred to in relator's petition.

The facts of the case are conceded.

The report of medical experts mentioned in the petition was to the effect that being unacquainted with the antecedent history or habits of the defendant they base their opinion solely on a protracted personal interview with him. That they found his mental tone good—conversation tranquil and in no way disturbed by mention or discussion of litigation in which he is involved. That the marks or evidence of definite mental disease they did not clearly discern. Prejudice and all kinds of extravagant opinions and conceptions which he has not the power to reject, of injuries and injustice which he has sustained at the hands of others, are so persistently and deeply fixed upon his mind, producing morbid irritability of feelings and mental worry to that degree that he is morally irresponsible for his acts and expressions. That he is a monomaniac on the subject of his wrongs, real or imaginary.

The exception filed by relator was to the effect that an inquiry by a jury of the panel after conviction and after the report of the medical commission on file and of record is irregular, illegal and not authorized by any law of this State; that the court is without jurisdiction *ratione personæ;* that such an investigation before a jury of the panel, who are not medical experts and therefore not competent to pass their opinion on the mental condition of the defendant, is unauthorized and contrary to law; that the investigation sought to be had by the law officers before the jury of the panel is violative of Art. 6 of the Constitution of 1879, and is an attempt to deprive him of his liberty without due process of law; that the Civil District Court is the only competent tribunal to pass on the mental condition of the defendant, as provided by Arts. 389 and 393 of the Civil Code; that after the conviction of the defendants for libel before Section "B" of the court, and during the pendency of a motion for a new trial, and before the court had passed on that motion, the assistant district attorney suggested to the court that the mental condition of defendant be inquired into, and thereupon the court ordered the motion to be granted, and appointed, according to law, a commission of medical experts to pass on the mental condition of the defendant, and the report is in writing, and forms part of the record in this case; that

the State is estopped by the acts of its legal officers from entering
into any further investigation as to the mental condition of defendant,
as the written report is conclusive proof as to said mental condition,
and can not.be contradicted by any evidence other than expert tes-
timony, and is presumed to be correct; that the medical commission
appointed are officers of the court, and are presumed to have done
their duty until the contrary is shown: that the report of the medical
commission is *res judicata;* that insanity is a special plea and resorted
to by a person charged with a crime or misdemeanor in order to
protect himself from the punishment provided by law for the com-
mission of the act; that on the trial of the case for libel before the
petit jury it was their province to acquit the accused by reason of
his insanity or mental derangement, as it was also in the power of the
grand jury not to indict the accused for the same cause, and that the
suggested inquiry as to defendant's mental condition by a jury of
the panel be declared illegal, null and void, and the court annul and
set aside this proceeding brought by the law officers against him.

We have copied this exception in full for the purpose of ascertain-
ing the precise grounds of complaint urged by the relator and the
counsel appointed by the court to represent him.

Taking it as a whole we understand that the action of the court in
appointing a medical commission at the time and under the circum-
stances it did is conceded to have been rightly taken, for the report
of the commission is declared to be conclusive and in the nature of
*res adjudicata.*

Had the court given the final force and effect to the report which
relator contends for, it seems its course would have been satisfactory.
It is because of the fact that it did not do so but proposes to pursue
the investigation further, and because by reason of the additional
fact that the judge has increased the amount of the bail bond from
$500 to what relator asserts to be an excessive amount, $10,000, he
has been, pending the examination, committed to prison, that objec-
tions have been urged to the proceedings below and to the jurisdic-
tion of the court.

We are not called upon to say whether the judge would have been
justified in considering the report as conclusive and acting upon it at
once, nor do we know what his action would have been had he felt
authorized to do so; but it does not admit of a doubt that it was en-
titled to no such weight as is attributed to it. The court evidently felt

that something more was required as to relator's mental condition than the mere suggestion of the assistant district attorney, to serve as a foundation for an investigation, and this report, which relator conceives to have been the ending of the examination, was in fact its basis or beginning. There is a manifest inconsistency between urging on one side that the judge's action up to and inclusive of the receiving of the report was strictly in accordance with the law and his powers, and asserting on the other hand that the whole subject matter is beyond the jurisdiction of the Criminal District Court and entirely within that of the Civil District Court, under proceedings to be based upon Arts. 289 and 293 of the Civil Code.

We are clearly of the opinion that the judge was authorized to pursue the course he did. The proceeding is not one, as relator seems to construe it to be, adverse and hostile to him, but one essentially for his good and his protection, and dictated by feelings of humanity. A system of law which would cause punishment to be inflicted forcedly upon a person whose mental condition was such as to render him not responsible for his acts, because no remedy was at hand to avert such a wrong, would be glaringly defective.

It is fortunate we do not entertain the same views on this subject that relator does, for the effect of holding his views would carry with it as a necessary result his punishment under the verdict of the jury heretofore rendered.

The case of relator was within the jurisdiction of the Criminal Court at the time the action complained of was taken—the proceeding was an incident of that case. The issue of sanity or insanity was one entering essentially into the question of the guilt of the accused and his punishment—for the purposes of the particular case the subject was not being investigated with reference to property rights or civil interdiction, but as a possible shield to the person convicted himself. The proceeding is one well known to the laws of England and of our sister States, and if direct authority were needed to authorize it in this State we think that authority can be found under the terms of Sec. 1768 of the Revised Statutes.

We think that the judge was authorized under that section upon the report of the physicians to direct an investigation as to the mental condition of relator and to engraft the proceedings for that purpose upon the case of Chandler, then in his court. We think the judge authorized in the absence of a direct mode of procedure being

exacted by that section, to mould the proceedings to correspond with the methods of proceeding resorted to for the purpose of the trial of analogous issues and we see no just ground of complaint that the issue should have been submitted to a jury instead of to the court.

What the proceedings will eventuate in we can not anticipate. Should any illegal action be taken or wrong and injury result relator will have ample time and opportunity to remedy it.    As matters now stand we see simply a proceeding which has been checked at its beginning, having in view not the injury, but, as we have said, the protection of relator, in which proceeding up to the present time we see nothing illegal or objectionable, and in which therefore we can not interfere.

The second branch of relator's case, however, presents a question of a different character.    Relator claims that in violation of Art. 9 of the Constitution excessive bail has been demanded as a condition of his regaining his liberty until his case is finally disposed of; that he is unable to give a $10,000 bond and that there is nothing to justify the exaction of so heavy a bond.

Art. 9 of the Constitution declares that " excessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishment inflicted. All persons shall be bailable by sufficient sureties unless for capital offences, where the proof is evident or the presumption great, or unless after conviction for any crime or offence punishable with death or imprisonment at hard labor."

What reasons  the  district judge had, after having subsequently to the rendition of the verdict of the jury, fixed relator's bail bond at $500, to increase the amount of that bond to $10,000, we are not informed.   No intervening act appears to have occurred.   The judge's ruling evidently recognized relator's right to bail.   There is no reason before us to show why it should be denied.

We understand that bond to have been given under the indictment brought against relator for the particular crime charged.   As said in Ike Williams, 23 Pacific 118, the determination of what is disproportionate to the offence involved depends upon the moral turpitude of the crime, the danger resulting to the public from the commission of such offences, and the punishment imposed or authorized by law therefor.

In Louisiana the punishment prescribed for libel is fine or imprisonment, or both, at the discretion of the court.

We think the amount fixed by the judge for the amount of the bond which relator is required to furnish, $10,000, is excessive, and that it should be reduced, and that a bond conditioned according to law for the sum of $1000 is sufficient.

It is therefore ordered, adjudged and decreed that the writ of *habeas corpus* sued out in this case be granted to the extent of permitting the relator to obtain his liberty after he will have furnished a bond to the satisfaction of the judge of Section " A " of the Criminal District Court, with all the required conditions, in the sum of $1000, thereby reducing the amount from $10,000 heretofore required to $1000.

In every other respect the said writ is denied, and the demands under it are rejected.    The prisoner is again placed in the custody of the sheriff.    It is also adjudged and decreed that the writ of *certiorari* and prohibition be denied and dismissed and that the original papers produced by the Criminal District Court be returned to that court.