O’NIELL, J.
The defendant, J. H. McIntosh, was indicted by the grand jury for the crime of murder. ‘ On account of his ill health he was not tried at the term of court next following his indictment and was not confined in jail, but was detained at the sheriff’s residence.
The defendant’s attorneys presented a petition to the judge of the district court, alleging that the defendant was dangerously insane, and that it would be unsafe for him to be at large, and unjust for him to be put on trial for his life in that condition. In accordance with the prayer of the petition, the judge appointed a lunacy commission, composed of five physicians and, thereafter, the judge heard the testimony of the doctors so appointed, and other evidence, on the question of sanity or insanity of the defendant.
The preponderance of proof was that the defendant was suffering from the effect of his long-continued addiction to the morphine habit. At the conclusion of the hearing, judgment was rendered rejecting the demand to have the defendant sent to the insane asylum, in which judgment, after reciting the proceedings, the court concluded thus:
“After having carefully read the testimony over, the court’s mind is in an undecided condition as to the sanity vel non, and rejects the application simply and purely upon a presumption of law.”
The judge evidently concluded that the defendant was an inebriate; for a week later he rendered an order, directing the sheriff to- convey the defendant to a sanitarium for the cure of his morphine habit, to be there detained in the custody of a deputy sheriff until the further orders of the court. On the approval of the police jury, and under authority of Act No. 100 of 1890 and Act No. 157 of 1894, the defendant was sent to a sanitarium for the treatment of inebriates; and, when pronounced cured of the drug habit by the authorities in charge of the institution, he was returned to the parish of Richland. He was then ordered tried for the crime of murder; and, as soon as the case was set down, two weeks before the date of trial, his wife, who is the relatrix in these proceedings, filed a petition in the district court, praying for an examination into the_ question of insanity of the defendant, under authority of Act No. 253 of 1910. The application was denied, and resort was then had to these mandamus proceedings.
In his return, the district judge has sent up the entire record, and says, in answer to the rule:
“The application of the relatrix was denied for the reason that, in the opinion of the court, the law invoked does not apply to persons under a criminal charge.”
It appears that the investigation made before the defendant was committed to the in *1003 stitution for the treatment of inebriates was not in accord with Act No. 253 of 1910, but according to the provisions of section 1768 of the Revised Statutes.
[1, 2] There is no expression in the statute of 1910 denying its application to persons under indictment for crime; but, in our opinion, it does not apply. Sections 993, 994, and 995 of the Revised Statutes, providing for the commitment to the insane asylum of any person acquitted of any crime on account of insanity, or not indicted for that cause,' seem to refer to insanity existing at the time of the alleged crime, insanity as an excuse for the alleged crime. But that is a different question from that of insanity existing at the time of the arraignment and trial for the crime, “present insanity,” as it is termed. It is as important that a person should not be required to answer to an indictment or be tried for his life or liberty while he is insane as it is that a person should not be held responsible for his deeds done when he was insane. The jury decides the question of guilt or innocence of the accused and may therefore decide the issue of insanity as an excuse for the crime. But it is the province of the trial judge to determine whether the accused is mentally incapable of pleading to an indictment on arraignment and defending his life or liberty at the trial.
This distinction was recognized in State v. Hays, 22 La. Ann. 41, where it was said:
“Previous or subsequent insanity in itself is no matter of excuse; the mania must have existed at the time the act was done; yet evidence of the presence of the malady, either before or after th,e act, is proper to be weighed by the jury for the purpose of forming a conclusion whether insanity existed at the time the alleged crime was committed” (citing numerous authorities).
From the decision in State v. Reed, 41 La. Ann. 582, 7 South. 132, we quote the following appropriate language used prior to the adoption of Act No. 253 of 1910, and without express reference to section 1768 of the Revised Statutes, viz.:
“Bill No. 1 was taken to the refusal of the judge to admit testimony offered to prove the insanity of the prisoner at the time of trial, in absence of any plea. There is no pretense that insanity existed * * * when the offense for which the defendant was prosecuted was committed. In such case it would have been a legal defense, and under the Revised Statutes, § 995, evidence thereof would have been admissible under the general plea of not guilty. But the precise question here presented is a novel one in this state. It is elementary that a man cannot plead, or be tried, or convicted, or sentenced, while in a state of insanity. Bishop, Or. L. § 396; Wharton, Or. L. § 53 et seq.; Bishop, Cr. Prac. 666-668. If insanity exist at the time of the arraignment, counsel should then make the objection, and, if sustained, the prisoner should be excused from pleading, and the proceeding should await his recovery. If not made at arraignment, the objection may be raised at any time before the commencement of the trial, and, if sustained, the trial cannot proceed. Even though not made until the trial has begun, it is still not too late, and must be considered and determined in some way. Indeed, even .after conviction, it may be opposed as a reason why sentence should not be passed.”
In the case last cited, it was said that, as the issue 'of present insanity was not raised before the trial commenced, the court should have admitted the evidence and submitted the issue to the jury, to be decided alone and without any verdict on the question of guilt or innocence if the jury concluded that the accused was then insane,'or the judge might have determined the question of present insanity in a proper proceeding.
In the case of State ex rel. Chandler, 45 La. Ann. 696, 12 South. 884, -it was said that, when a doubt as to the sanity of an accused person arises after conviction, no application having been made to inquire into his mental condition before the trial, the judge was authorized to ingraft upon the proceedings _ in the criminal case the proceedings provided for in section 1768 of the Revised Statutes. In that case, however, the ques-. tion was as to the sanity of the accused at the time of the commission of the alleged crime, as well as at the time of the trial.
*1005 In the case of State ex rel. Armstrong v. Judge, 48 La. Ann. 503, 19 South. 475, where the relator was convicted of murder and sentenced to death, and the trial judge had subsequently, at the defendant’s instance, appointed a commission of medical experts to examine into and determine the question of his sanity or insanity, it was held that the relator had no right thereafter to have the question of his sanity submitted to a jury. ,
And, in the case of State v. Lyons, 113 La. 1000, 37 South. 890, where the defendant was convicted of murder and sentenced to suffer death, a p'lea of present insanity was filed after the conviction, the trial judge appointed a lunacy commission and ordered that the issue be submitted to a jury. Thereafter, he revoked the order for the jury trial, and, on the report of the commission of experts that the defendant was sane, the judge pronounced the sentence. Insanity at the time of the homicide, and as the excuse therefor, had been, relied upon as the main, if not only, defense before the jury.
In State ex rel. Kennedy v. Sheriff, 48 La. Ann. 1231, 20 South. 749, the relator being under indictment for two crimes, his counsel filed a plea of present insanity, and the judge of the criminal court appointed a lunacy commission, who reported that the accused was insane. The issue was then submitted to a jury, who returned a verdict that he was insane, after which he was remanded to prison. Interdiction proceedings were thereafter instituted in the civil district court, where the defendant was adjudged an interdict and ordered sent to the state hospital for the insane. He invoked the supervisory jurisdiction of this court on the ground that the criminal district court, and not the civil district court, had jurisdiction of the question of his sanity or insanity, It was decided that the civil district court had jurisdiction, because the plea of insanity was not presented as a defense in the criminal prosecution or as an excuse for the crime; and it was said that if that had been the case, section 1780 of the Revised Statutes, requiring the jury to state the reason in their verdict when they acquit an accused on the ground of insanity, would apply. The distinction between insanity as a defense in a criminal 'prosecution and present insanity was clearly recognized.
The decisions in State ex rel. Chandler, 45 La. Ann. 696, 12 South. 884, and State ex rel. Armstrong v. Judge, 4S La. Ann. 503, 19 South. 475, were referred to with approval in State ex rel. Paine v. Judge, 49 La. Ann. 1502, 22 South. 738, where it was held that after the question of insanity, at the time of the alleged crime and up to the time of trial, had been submitted to the jury in the criminal prosecution, the trial judge was not required to reopen the question of sanity or insanity, in the absence of any allegation that the mental condition had changed since the conviction.
In the case of State v. Charles, 124 La. 744, 50 South. 699, 18 Ann. Cas. 934, it was said that insanity arising after the commission of a crime merely operates a stay of the criminal proceedings, and that the trial judge might submit the issue of present insanity to the jury or determine the question by the aid of a commission of experts. In that case, however, the author of this opinion being the trial judge, the question of insanity was raised as a defense; the contention was that the accused was insane at the time he committed the homicide, as well as at the time of arraigmnent. Although the counsel for the defendant objected to his being arraigned before the lunacy commission had made a report, they did not demand that the question of the then present insanity be determined by the judge, but acquiesced in having the matter submitted to and decided by the jury.
*1007 Whatever may have been said in the opinion last cited, our conclusion is thát a person who is accused of a crime is not thereby deprived of the right to have the question of his then present insanity inquired into and determined by the judge before being put on trial for his life or liberty.
The plea of present insanity does not pertain to the guilt or innocence of the accused, but merely challenges the right of the state to put the defendant on trial at that time. That question should be decided by the judge when it is properly demanded of him before the criminal trial has commenced. In the cases in which it has been held that, where the question was as to the mental condition at the time of the alleged crime as well as at the time of filing the plea, the issue was properly submitted to the jury along with all other questions of guilt or innocence of the accused, it was because the defendant did not insist upon the plea of present insanity being first decided by the judge. But it has never been held that the plea of present insanity can be submitted to the jury with the question of- guilt or innocence of the accused, against the protest of the defendant’s representatives, even where it was not contended that the insanity asserted itself after the alleged crime. Our conclusion is that the accused cannot be compelled to submit that preliminary question to the jury, and that the relatrix is therefore entitled to the relief prayed for.
For the reasons assigned, it is ordered that the writ of mandamus issue as prayed for, directing the respondent judge to inquire into and decide the question of the present sanity or insanity of the accused, before putting him on trial for the crime charged.