JONES v. STATE.*

(In Banc.    April 11, 1927.)

[112 So. 170.    No. 26422.]

1. BREACH OF THE PEACE. *Habeas corpus. Court may require one convicted of offense less than felony to give only reasonable peace bond; if court requires excessive bail to keep peace, one convicted of offense less than felony may by habeas corpus have bail reduced; bond of two thousand five hundred dollars to keep peace, required of one sentenced to six months' imprisonment for possession of intoxicating liquor, held excessive (Hemingway's Code, sections 38, 41, 1323; Constitution 1890, section 29).*

Under section 1323, Hemingway's Code (section. 1561, Code of 1906), providing that "every court before which any person shall be convicted of an offense less than a felony may, in addition to the penalty prescribed by law, require the convict to enter into bond in a reasonable sum, with or without sureties, to keep peace and to be of good behavior," etc., the court may require only a reasonable bond having relation to the character of the offense, the amount of punishment prescribed by law, and the ability of the convict to give bail; and, if excessive bail be required, the convict may, by *habeas corpus*, have the amount of bail reduced to a reasonable sum.

2. BREACH OF THE PEACE. *Habeas corpus. Bond to keep peace, required of one convicted of offense less than felony, relates only to future good conduct; fine and imprisonment for misdemeanor are separable from requirement to give peace bond, as regards right to habeas corpus to reduce excessive bond (Hemingway's Code, section 1323).*

Under said section, while the bond may be required in the same proceeding and embraced in the same judgment against the convicted person, it has relation to future conduct and good behavior, and not to punishment for the past misdemeanor. The fine and imprisonment, part of the judgment, are separable from the requirement to give bond for future behavior.

HOLDEN and McGOWEN, JJ., dissenting.

*Corpus Juris-Cyc References: Bail, 6CJ, p. 989, n. 7, 12; p. 990, n. 18;; p. 991, n. 21, 24; Breach of the Peace, 9CJ, p. 393, n. 16; p. 396, n. 75 New; Habeas Corpus, 29CJ, p. 7, n. 8; p. 95, n. 98.

APPEAL from circuit court of Marion county.

HON. J. Q. LANGSTON, Judge.

Petition by Sidney Jones against the state for *habeas corpus*. From a judgment of dismissal, petitioner appeals. Reversed and judgment rendered.

*B. J. Goss,* for appellant.

Section 2011, Hemingway's Code, states, "The writ of *habeas corpus* shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty." This appellant being unable to execute the unreasonable bond fixed by the circuit judge, under

section 1561, Hemingway's Code, he was then illegally and unlawfully confined; and if this be true, the chancellor certainly had the right to hear the case on *habeas corpus* as to a reduction of the bond, as is provided by section 2014, Hemingway's Code.

Our contention is that appellant could not appeal from the judgment of the circuit court in this case for the reason that section 13, Hemingway's Code, provides, "An appeal from the circuit court to the supreme court shall not be allowed in any case where the defendant entered a plea of guilty." The appellant herein entered a plea of guilty on arraignment in the circuit court.

Again, appellant was sentenced to serve six months in jail, which he did, and during the time of his incarceration it was useless for him to attempt to execute the said peace bond required by the circuit judge. After the said incarceration of six months, he could not appeal for the reason that section 582, Hemingway's Code, Supplement of 1921, provides that notice of an appeal shall be given within ten days after the adjournment of the court; therefore, in either case, he was barred from an appeal to the supreme court.

The only remedy is by *habeas corpus* to have the peace bond reduced.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

See section 1323, Hemingway's Code. *Jackson* v. *Belew,* 110 Miss. 243, 70 So. 346, is controlling. The allegations in the petition for a writ of *habeas corpus* show conclusively that the defendant was "suffering imprisonment" under a lawful judgment—see section 2012, Hemingway's Code—and that for this reason the demurrer to the petition was properly sustained by the circuit judge.

It appears from his argument that appellant was cut off from an appeal, but he can do indirectly what the law

prohibits him from doing directly. Section 2011, Hemingway's Code, which provides "that the writ of *habeas corpus* shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty," does not apply to the facts in this case because the allegations in the petition show that he was legally confined. Section 156, Constitution of Mississippi, and also section 159.

The chancery court has no jurisdiction to try the *habeas corpus*. The judgment of the circuit court is correct and should be by this court affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Sidney Jones, filed a petition for *habeas corpus* before the circuit judge of the district in which Marion county is situated, alleging that he was a resident citizen of Marion county, Miss., and that he was indicted by the grand jury of Marion county, in June, 1926, on a charge of unlawfully possessing intoxicating liquor, and, being arraigned upon said charge, entered a plea of guilty, and was by the court sentenced to pay a fine of five hundred dollars and to serve six months in the county jail, and in addition to said fine and imprisonment was required by the court to enter into a good and sufficient bond with sureties in the sum of two thousand five hundred dollars for his future good behavior for a period of two years from date of sentence, a copy of which judgment was made an exhibit to the petition.

It was further alleged, that in November, 1926, the petitioner filed a petition for a writ of *habeas corpus* before the chancellor of said county, which petition came on for hearing before the chancellor on the 27th day of November, 1926, in which petition it was alleged that the petitioner was unable to execute a bond in the sum of two thousand five hundred dollars, that he was a poor boy, with an aged father and mother dependent upon him, that his associates and the people with whom he

had been thrown were unable to assist him in executing said bond, and, as his father and mother owned no property with which they could assist him in making said bond, that petitioner was without means and could not make a bond for said sum, which amount is prohibitory and excessive, and that the petitioner was held a prisoner without authority of law and in conflict with the Constitution and the laws of the state of Mississippi, whereupon the chancellor in said hearing reduced the said bond from two thousand five hundred dollars to the sum of five hundred dollars, a copy of the chancellor's decree being made an exhibit to the petition in the present case.

It is further shown in the petition that the bond allowed by the chancellor was made, and the sheriff approved the sureties thereon and discharged the petitioner, but subsequently rearrested him and recommitted him to prison in default of the bond of two thousand five hundred dollars; the petitioner having paid the fine and served out the sentence imposed by the circuit court. The petitioner further alleged that the bond allowed by the chancellor and approved by the sheriff was sufficient, and that therefore the sheriff had no legal authority to hold him in prison or to require him to give other bond than that fixed by the chancellor, and prayed for an order discharging him from custody.

The judgment of conviction, made an exhibit to the petition, recited:

"Comes the district attorney, who prosecutes the plea of the state, comes also the defendant, Sidney Jones, in his own proper person, he being arraigned on a bill of indictment, charging him with having intoxicating liquors in his possession, and he being required to plead thereto, pleads guilty; whereupon the defendant, Sidney Jones, is placed at the bar to have and receive the sentence of the court, and, having nothing to say in bar of the sentence of the court, it is now the judgment of the court, and is so ordered, that the said defendant, Sidney Jones, be and he is hereby fined in the sum of two hundred dol-

lars and all costs, and is to serve a term of six months in the county jail. It is further ordered by the court that the said Sidney Jones, when he shall have served the said six months in prison, shall give bond payable to the state of Mississippi in the sum of two thousand five hundred dollars, with good security; the condition of said bond is such, that, if the said Sidney Jones does not violate any of the laws of the state of Mississippi, within a period of two years, then this bond is void, otherwise to remain in full force and effect. It is further ordered by the court that the said defendant, Sidney Jones, remain in jail until said bond of two thousand five hundred dollars be executed."

The judgment of the chancellor on the *habeas corpus* trial recited:

"This cause coming on to be heard in vacation upon petition, writ of *habeas corpus,* and oral testimony, praying that petitioner be released from the custody of W. W. Branton, sheriff of Marion county, Miss., under an order of the circuit court requiring that the petitioner herein make and execute a bond in the sum of two thousand five hundred dollars for the good behavior and strict conformity of the laws of the state of Mississippi, for a period of two years from the —— day of June, 1926, asking that said bond be reduced to a sum within the bounds of which the petitioner may give and execute, and after the court having heard and considered the same is of the opinion that the said bond of two thousand five hundred dollars is excessive, and one that the petitioner could not give under the said order of the circuit court, and the undersigned is of the opinion that the said bond should be reduced to the sum of five hundred dollars, the said Sidney Jones agreeing to leave the state of Mississippi forthwith and to remain out of said state:

"It is therefore ordered and it is hereby adjudged by the court that the said bond be and the same is hereby reduced to the sum of five hundred dollars, and that the said sheriff, W. W. Branton, is hereby authorized to ac-

cept a good and sufficient bond from the petitioner, with sureties, satisfactory with the said sheriff in the said sum of five hundred dollars, and that the said sheriff liberate the said Sidney Jones upon his execution of the said bond in the said sum of five hundred dollars, when the judgment of the circuit court is complied with, other than the bond of two thousand five hundred dollars, but the said bond is hereby made at and for the sum of five hundred dollars, and the said sheriff, W. W. Branton, is hereby authorized to release from his custody the said petitioner upon the execution of the said bond of five hundred dollars, as stated above.''

The sheriff, in his return on the present writ, stated:

''. . . He, the said sheriff, has the body of the said Sidney Jones in his custody, and has him confined in the county jail of Marion county, Miss., by virtue of the proceedings of the honorable circuit court of Marion county, Miss., as set out in full in the petition for writ of *habeas corpus* in this cause, and by virtue of a *capias pro finem* issued by the clerk of the circuit court aforesaid, on the plea of and sentence set out in the petition for writ of *habeas corpus*.

''The said sheriff now attaches hereto, a copy of the writ of *capias pro finem,* and produces the body of the said Sidney Jones before the court, and awaits the order of the said court as to what shall further be done with the said Sidney Jones in the premises.''

The district attorney appeared for the state and demurred to the petition for *habeas corpus* on the grounds: (1) That it showed on its face that Sidney Jones was suffering imprisonment under a lawful judgment, and, by virtue of the provisions of section 2446 of the Mississippi Code of 1906, the writ of *habeas corpus* had no application in such case; (2) that the chancery court was without authority to hear and consider the said former petition for writ of *habeas corpus,* and was without authority to change or modify the judgment of the circuit court in a case where petitioner was suffering imprison-

ment under a lawful judgment; (3) that the decree of the chancellor on its face was null and void and of no effect; (4) that the judgment of the circuit court, requiring the execution of the bond of two thousand five hundred dollars in question fixed a part of the punishment to be inflicted on the petitioner the same as the payment of the fine and the imprisonment named in said judgment; and (5) that the petition showed on its face that petitioner is lawfully confined. This demurrer to the petition for *habeas corpus* was by the circuit judge sustained, and the same was dismissed, from which decision this appeal was prosecuted.

The bond of two thousand five hundred dollars was required under the provisions of section 1561, Code of 1906 (section 1323, Hemingway's Code) which provides:

"Every court before which any person shall be convicted of an offense less than a felony may, in addition to the penalty prescribed by law, require the convict to enter into bond in a reasonable sum, with or without sureties, to keep the peace and to be of good behavior for any time not longer than two years, and may order him to stand committed until such bond be executed; and for any breach thereof it may be proceeded on by *scire facias* as in other cases."

It is the contention of the state, and so held by the circuit judge, that the fixing of the bond for future good behavior was a part of the punishment inflicted upon the appellant for the commission of the offense, and therefore the chancellor on the *habeas corpus* proceeding had no jurisdiction to reduce the amount of the bond.

The prime question for consideration is whether or not *habeas corpus* will lie to reduce a bond of this kind where it is excessive. If jurisdiction exists in the *habeas corpus* court to reduce the bond, then the judgment of the chancellor on *habeas corpus,* not having been appealed from, is final and conclusive; but, if he has no jurisdiction, his order will be void and of no effect. This question involves a consideration of the purpose of the stat-

ute, and the determination of the question as to whether it is punitive or preventive justice that is administered under this statute in requiring bond to secure future behavior of the person convicted.

While the judgment of the circuit court in requiring the bond is rendered in the same proceeding that the defendant is convicted in, we think it is separable from the judgment inflicting punishment, for it is not punitive in its nature, but is designed to prevent the commission of future offenses during the period described. Blackstone in his Commentaries, Cooley's 4th Ed. of Blackstone Commentaries, Book 4, *. p. 251, *et seq.*, in discussing this questions says:

"We are now arrived at the fifth general branch, or head, under which I propose to consider the subject of this book of our Commentaries; viz. the means of preventing the commission of crimes and misdemeanors. And really it is an honor, and almost a singular one, to our English laws, that they furnish a title of this sort, since preventive justice is, upon every principle of reason, of humanity, and sound policy, preferable in all respects to punishing justice, (a) the execution of which, though necessary, and in its consequences a species of mercy to the commonwealth, is always attended with many harsh and disagreeable circumstances.

"This preventive justice consists in obliging those persons whom there is a probable ground to suspect of future misbehavior, to stipulate with and to give full assurance to the public, that such offense as is apprehended shall not happen; by finding pledges or securities for keeping the peace, or for their good behavior. This requisition of sureties has been several times mentioned before, as part of the penalty inflicted upon such as have been guilty of certain gross misdemeanors; but there, also, it must be understood rather as a caution against a repetition of the offense, than any immediate pain or punishment. And indeed, if we consider all human punishments in a large and extended view, we shall find them

all rather calculated to prevent future crimes, than to expiate the past, since, as was observed in a former chapter, (b) all punishments inflicted by temporal laws may be classed under three heads, such as tend to the amendment of the offender himself, or to deprive him of any power to do future mischief, or to deter others by his example, all of which conduce to one and the same end, of preventing future crimes, whether that can be effected by amendment, disability, or example. But the caution that we speak of at present is such as is intended merely for prevention, without any crime actually committed by the party, but arising only from a probable suspicion that some crime is intended or likely to happen; and consequently it is not meant as any degree of punishment unless, perhaps, for a man's imprudence in giving just ground of apprehension.

"By the Saxon constitution these sureties were always at hand, by means of King Alfred's wise institution of decennaries or frank pledges, wherein, as has more than once been observed, (c) the whole neighborhood or tithing of freemen were mutually pledges for each other's good behavior. But this great and general security being now fallen into disuse and neglected, there hath succeeded to it the method of making suspected persons find particular and special securities for their future conduct, of which we find mention in the laws of King Edward the Confessor.; (d) *'tradat fidejussores de pace et legalitate tuenda'* (let him deliver sureties for maintaining peace and good behavior). Let us, therefore, consider, first, what this security is: next, who may take or demand it; and, lastly, how it may be discharged."

In Wharton's Criminal Procedure (10th Ed.), vol. 3, p. 2315, section 1886, under heading, "Defendant, after Verdict, may be Bound Over to Keep the Peace," the following is said:

"There are cases when, in addition to, or as an alternate for, fine and imprisonment the court will hold over the defendant in bonds to keep the peace, or to abate or

discontinue the offense for which he was tried. And this holds good even after acquittals, whenever the judge trying the case has sufficient reason, from the evidence before him, to judge such course necessary to prevent a violation of public peace and law. This power is inherent in all justices of the peace. But, unless necessary to protect the public from notorious crime, the court, after acquittal, will not direct the defendant to be detained until articles of peace against him are prepared.''

The supreme court of West Virginia, in the case of *State* v. *Gould,* 26 W. Va., page 258, at page 268 of the official report, in discussing this question, said:

''The evidence necessary to justify the requirement of any person to give security, either to keep the peace or to be of good behavior, is so entirely different from that required to convict any one of the misdemeanor, that it would be impossible for a court from the evidence, which was given before a jury, who had found a defendant guilty of a misdemeanor, to decide whether it was right or not to require him to keep the peace and be of good behavior. In the trial for the misdemeanor no evidence is permitted to be introduced by the commonwealth except that, which tends to prove, that the defendant has committed the past misdemeanor, of which he stands charged. Now by the common law no man can be required to give sureties to keep the peace or be of good behavior, simply because he has committed a past misdemeanor. But such sureties to keep the peace could only be required of a person to protect some individual against injury, which he has just cause to fear such person intends to commit against him.''·

This case contains an elaborate discussion of the question, and the supreme court of this state reached the conclusion that the common law of England on this subject was never in force in Virginia, or in that part of West Virginia taken from Virginia.

In *Estes* v. *State,* 2 Humph. (Tenn.), p. 498, the supreme court of that state, in discussing this question, after quoting Blackstone, *supra,* said:

"In this respect, therefore, the common law, is the law of this state. But this power, although discretionary, must be exercised with a sound legal discretion by the circuit court. The misdemeanor must, according to Blackstone, be of a gross character, where this judgment is given. It does not follow, that because a party has been guilty of a misdemeanor, that he may be required to find sureties for good behavior. The character of offense of which he may be guilty, must contain in itself that turpitude that would justify the appellation 'gross' to the offence; or the evidence must disclose circumstances connected with it, aggravating it to that character."

The very nature of the bond required here is not to compensate the state or to punish the defendant. It is intended as a security to either the people generally, as in this case, or to particular individuals or to particular offenses. If the bond, because of past derelictions of the defendant, were never forfeited, then it would only be forfeited, or a recovery lie upon it, in case the defendant in the future commits some other offense. Its purpose is directly intended to secure future behavior, or to abide by the law in the future, and it is not inflicted as a punishment, but is required where the circumstances of the case make it probable that the defendant will break the law in the future. It was deemed by the legislature unnecessary to institute a separate proceeding wherein the facts developed in the trial show what it would be were a regular peace bond proceeding instituted. In our opinion, the statute contemplates that the defendant may be required to give such bond as he can reasonably give, having regard to the ability of the convicted person to give bond and the probability of his committing offenses in the future. It was not the purpose of the legislature to require unreasonable things at the hands of a defendant; it is not the public policy of the state to keep

a person in jail for an offense which he may commit, but has not, in fact committed. The purpose of commitment until the bond is given is intended to secure diligent efforts upon the part of the convicted person and his friends to make the required bond. The statute uses the words, "require the convict to enter into bond in a reasonable sum, with or without sureties, to keep the peace," etc. Its very language indicates that it was not the purpose of the legislature to authorize a requirement in this regard that could not be complied with. The circuit judge having imposed a bond in passing sentence upon the convicted person, the question then arises whether the judge presiding over the *habeas corpus* proceedings be the circuit judge or the chancery judge. Has such judge on *habeas corpus* proceedings the power to inquire into the reasonableness of the bond required by the judge in passing the sentence?

Section 29 of the state Constitution provides:

"Excessive bail shall not be required; and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great."

In 6. C. J., pp. 989 to 991, inclusive, sections 222 and 223, it is stated:

"Sec. 222. *Excessive Bail.* The Constitution of the United States and those of most of the states expressly provide that excessive bail shall not be required. This guaranty in the federal Constitution does not apply to or control the courts or officers of the several states.

"Bail must not be in a prohibitory amount, more than the accused can reasonably be expected under the circumstances to give, for, if so, it is substantially a denial of bail within the constitutional provision. However, a mere inability to procure bail in a certain amount does not of itself make such amount excessive; but regard must be had to the circumstances and ability of the prisoner, in connection with the atrocity of the offense, or the turpi-

tude of the crime and the punishment involved, in determining whether the bail is or is not excessive.

"Sec. 223. *Reduction or Increase of Bail.* (*a*) *In General Reduction.* A reduction of bail may be obtained either by a simple application to the court, or by *habeas corpus,* where the amount thereof is clearly disproportionate to the offense or is unreasonably large; where it appears, on a proper presentation and showing, to be excessive; where the public interests will be the better subserved; or where there are other legal and justifiable reasons therefor.

"An application for a reduction should set forth that the amount is excessive; and, although bail was allowed before indictment, a second application may be made, after indictment, to have the amount reduced. And in some jurisdictions, on such application after indictment, the prisoner's guilt will be presumed.

"*Increase.* The amount of bail may be increased where, in the judgment of the court, it is necessary. But an increase of bail has been refused after indictment, or after the accused has been admitted to bail, on an affidavit of aggravating facts."

A number of authorities are cited in the notes to sustain this text, and they fully support section 29 of the Constitution of this state. See *Ex parte Douglas,* 25 Nev. 425, 62 P. 49; *Beldens* v. *Cromelines,* 1 Wend. (N. Y.) 107; *Bunting* v. *Brown,* 13 Johns. (N. Y.) 425; *Evans* v. *Foster,* 1 N. H. 374; *State* v. *Best,* 7 Blackf. (Ind.) 611; *Ex Parte Duncan,* 54 Cal. 75; *State ex rel. Chandler,* 45 La. Ann. 696, 12 So. 884; *In re Scott,* 38 Neb. 502, 56 N. W. 1009; *Ex parte Creed,* 67 Tex. Cr. R. 173, 149 S. W. 192; *Ex parte Ross,* 70 Tex. Cr. R. 493, 157 S. W. 496; *Ex parte Finn,* 48 Tex. Cr. R. 606, 90 S. W. 29.

In these cases, these courts held *habeas corpus* to be an appropriate remedy, and that the criterion as to whether bail is excessive or not was based upon the convicted person's ability to give bail, with the probability of his appearance for trial or for compliance with further

order of the court, coupled with the nature and character of the offense and the amount of punishment inflicted therefor. In *Ex parte Creed, supra,* the appellant was charged with three separate offenses which might have been punished by imprisonment for a short term in the penitentiary. The court required one thousand dollars bail for the first case, and seven hundred fifty dollars for each of the other two cases. On application by *habeas corpus,* this bail was held to be excessive and was fixed at five hundred dollars for each case. In *Ex parte Ross, supra,* the defendant was indicted on a charge of robbery and was placed on trial and the jury disagreed. Bond was fixed by the judge trying the case at twenty thousand dollars, which amount the defendant was unable to give, and a writ of *habeas corpus* was sued out by him, and his bond reduced to five thousand dollars. These decisions construed constitutional provisions similar to our own prohibiting excessive bail.

*Habeas corpus* is preserved to the people in the Bill of Rights, and was intended to secure to them perpetually the right to the writ of *habeas corpus* as it existed in England and in this country at the time of the Revolutionary War. It is designed to give relief from every unlawful restraint, and to protect the people in the enjoyment of their personal liberty. Bail is favored by the public policy of this state. It is not considered for the best interest of the state for a person, where they have committed no offense, to be placed in prison because of inability to give a bond in a large amount. If the convicted person is released under the chancellor's bond, and he thereafter commits another offense, he could be tried therefor, and his bond forfeited, and could be placed under a new requirement to give bond should that be necessary under such conditions. The public has ample protection by taking appropriate proceedings should the convicted person improperly demean himself. In the case before us, the party seems to have been sentenced excessively for the misdemeanor. We have been unable

146 Miss.—53.

to find any statute authorizing the infliction of six months' imprisonment for the mere possession of intoxicating liquor. Such sentence, however, was served, and no appeal taken therefrom. It would be a great injustice to the convicted person to require him to remain in prison for an additional period of two years because of his inability to give the bond in the amount required by the circuit judge.

Considered in relation to the character of the offense and the punishment therefor, the bond appears to be clearly excessive; and under the law as it now stands, the imprisonment of a person is limited to thirty days; the court having recently declared the act of 1922 [Laws 1922, chapter 210] authorizing ninety days unconstitutional. An appeal bond for a misdemeanor from a justice court to the circuit court is from one hundred dollars to five hundred dollars, and, in case of violation of the liquor law, a bond of one thousand dollars may be required. In criminal cases, an appeal bond, under section 62, Code of 1906 (Hemingway's Code, section 38), from the circuit court to the supreme court, to stay the judgment or sentence appealed from, is required in double the estimated amount of costs accrued and likely to accrue in the case in event the judgment be affirmed. Under section 41 of Hemingway's Code (section 65, Code of 1906)—"in all cases of conviction of a misdemeanor, an appeal taken shall stay the judgment appealed from; and the appellant, if sentenced to imprisonment for his offense, or to stand committed until his fine and costs shall be paid, may be relieved from such imprisonment or commitment, pending his appeal, by giving bond, with sufficient resident sureties or one or more guaranty or surety companies authorized to do business in this state, to be approved by the clerk of the court from which the appeal is taken, payable to the state in the penalty of not less than one hundred dollars nor more than one thousand dollars, to be determined by such clerk, with reference

to the grade of the offense, as indicated by the judgment, and the ability of the appellant to give bond,'' etc.

These sections indicate the public policy with reference to the amount of bond required in this state to appeal from a judgment, and it seems that, in a misdemeanor, the requirement to give a bond for good behavior should not be in excess of the amount that would stay the judgment in case of an appeal from an offense from the circuit court to the supreme court. We are therefore of the opinion that *habeas corpus* will lie to reduce the bond to secure the good behavior of a person convicted of crime under the above section of the Code, and that the judgment of the circuit court imposing a bond of two thousand five hundred dollars is excessive. We think therefore that the chancellor on *habeas corpus* had jurisdiction of the matter, and that his judgment not being appealed from, is valid and binding, and that it was improper to rearrest and reimprison the appellant after he had given the bond required by the *habeas corpus* proceeding.

The judgment of the lower court will therefore be reversed, and judgment entered here releasing the appellant on the bond required by the *habeas corpus* proceeding before the chancellor, sitting as a *habeas corpus* court.

*Reversed, and judgment for appellant.*

HOLDEN, J. (dissenting).

I think the majority opinion is manifestly in conflict with the ruling of this court in the case of *City of Jackson* v. *Belew,* 110 Miss. 243, 70 So. 346, and, for that reason, as well as for others, is erroneous. That case is not overruled by the majority opinion, nor is it even mentioned therein so far as I have been able to discover. Surely this is unusual. I respectfully invite a reading of the *City of Jackson* v. *Belew case,* which I think is sound. However, whether it is sound or not, it should be followed, or overruled in an orderly manner.

The majority opinion, as I see it, is a piece of judicial legislation, and I am not so much opposed to the opinion

on that ground, because the ablest courts in our country have innocently, and, perhaps, wisely legislated in some rare instances, but my objection to the majority opinion is that it destroys the value of section 1323, Hemingway's Code, and permits an appeal and review of a judgment under the guise of *habeas corpus*.

The majority say that this section requires a bail bond. But it seems to me that it is not a bail bond, in the common sense; that is, not a bond for an appearance to answer a charge before a court, but it is an obligation, in the nature of a penalty, which may be collected if the obligor breaches the bond. That is all that the bond means.

This statute has been used to good purpose by the courts of this state for several decades. It has often been used as a club held over the heads of "bullies," "wifebeaters," and other undesirable violent criminals, in cases of conviction, where the court thought the convict should be put under restraint, in order to check his violent proclivities, as provided by the statute.

The penalty fixed by the court under the statute is certainly additional to a conviction of the offense, and it is a solemn judgment of the court. It cannot be reached by *habeas corpus,* but the only remedy given is to appeal from the conviction, which carries an appeal of the whole judgment. See *Jackson* v. *Belew, supra.*

I am inclined to believe that the majority opinion is really an effort to get rid of a severe and harsh statute. However, it is the business of the legislature to repeal statutes and not this court, so long as they are constitutional. The statute here involved has stood the test against unconstitutionality for a long period of time. Section 2012, Hemingway's Code, provides against the discharge of any person who is imprisoned by lawful judgment.

Probably the legislature might amend the statute in question so as to grant an appeal where one is required to give bond thereunder, but this court ought not to grant appeals under this statute by the *habeas corpus* route,

because the evil will grow so that *habeas corpus* may be resorted to to upset a perfectly regular judgment rendered by any court for any offense.

The majority opinion may be beneficient legislation, but it is in conflict with prior decisions of this court, and does much, in my opinion, to impair a very useful statute.

McGowen, J., joins me in this dissent.