the parties involved are no longer here to defend themselves.

The judgment of the district court is affirmed, at appellant's costs.

23 So.2d 305

**STATE v. GUNTER et al.**

No. 37836.

June 29, 1945.

Rehearing Denied July 17, 1945.

ROGERS, Justice.

Jeff Gunter, Wilson Hargraves and Henry Murray were charged by bill of information with the offense of simple kidnapping. Article 45, Act No. 43 of 1942—the Criminal Code.

On arraignment Murray pleaded guilty and sentence was deferred. Jeff Gunter and Wilson Hargraves pleaded not guilty. On the trial of those defendants, Henry Murray was used as a state witness. Defendants were found guilty and each was sentenced to five years imprisonment in the state penitentiary. This appeal followed.

On the trial of the case, defendants were represented by separate counsel and it was agreed at the outset of the trial that an objection made by counsel for either defendant would be available to the other defendant if the objection were applicable to both defendants. The agreement was in accordance with the terms of Article 501 of the Code of Criminal Procedure providing that whenever a bill of exception has been reserved in a criminal proceeding and there is more than one defendant on trial, it shall be presumed, unless the contrary clearly appear, that the bill was reserved by all the defendants. Some of the objections were applicable to one defendant and not to the other.

John R. Hunter & Son, of Alexandria, for defendant-appellant Jeff Gunter.

K. Hundley, of Alexandria, for defendant-appellant Wilson Hargraves.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Ben F. Thompson, Dist. Atty., and Walter M. Hunter, Asst. Dist. Atty., both of Alexandria, for appellee.

The principal complaint of the defendant, Wilson Hargraves, on his appeal, is directed at the failure of the judge to fix a time for a hearing to determine defendant's present insanity and at the refusal of the judge to permit testimony as to defendant's sanity at the time of the com-

mission of the offense to be submitted to the jury.

It appears from the record that after the State had introduced its testimony and the defendants had introduced their testimony, including three witnesses tending to show an alibi on the part of Hargraves, Mrs. Ellis Hargraves, the mother of the defendant, was placed on the stand to testify as to his mental condition. After she had testified on direct examination that shortly before the commission of the alleged crime her son had been discharged from the navy, she was asked what was the reason for his discharge. The question was objected to by the State on various grounds. Before the judge was able to rule on the objection, counsel for Hargraves announced that one of the defenses was insanity. The judge sustained the objection, but permitted Mrs. Hargraves to be questioned, out of the presence of the jury, as to what she had observed about her son's mental condition. Counsel for Hargraves also announced that he raised the question of defendant's present insanity and requested that the judge appoint a lunacy commission to examine Hargraves. This request was denied and the plea of present insanity was overruled.

Article 261 of the Code of Criminal Procedure provides that there are four pleas to an indictment (or information) viz., guilty, not guilty, former jeopardy and insanity. In State v. Toon, 172 La. 631, 135 So. 7, it was held that the effect of the article was merely to make a change in the procedure by which the question of insanity is withdrawn from the plea of not guilty and required to be raised by a direct plea.

Act No. 261 of 1944 amends and re-enacts Article 267 of the Code of Criminal Procedure, as amended by Act No. 136 of 1932, and is the law governing pleas of insanity in criminal prosecutions. Paragraph 3 of Section 1 of the statute applies whenever insanity is relied on as a defense to a criminal charge and contemplates a hearing contradictorily with the State after the filing of a motion or plea. Thus, in State v. Eisenhardt, 185 La. 308, 169 So. 417, where the court had under consideration similar provisions contained in Act No. 136 of 1932, it was held that when the insanity of the defendant at the time of the commission of the offense becomes an issue in the case, the issue involves a question of fact affecting the guilt or innocence of the defendant and must be submitted to the jury for decision. The court further held that under the plain terms of the statute the existence of insanity or mental defect on the part of the defendant at the time of the alleged commission of the offense charged becomes an issue in the case only when specially pleaded.

In the absence of a special plea setting up as a defense defendant's insanity or mental irresponsibility, the issue of defendant's mental condition at the time the offense was committed did not arise in this case and the judge did not err in excluding evidence on the issue and refusing to permit it to be submitted to the jury.

The first two paragraphs of section 1 of Act No. 261 of 1944 relate to the present mental condition of the defendant in a criminal prosecution. These statutory provisions relate specifically to proceedings before or during the trial and before conviction, and announce the rules to be followed by the judge in order to determine the defendant's present mental condition. So far as they need to be quoted here, they are as follows: "If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane, or mentally defective, to the extent that he or she is unable to understand the proceedings against him or her or to assist in his or her defense, the court shall immediately fix a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested physicians to examine the defendant with regard to his present mental condition and to testify at the hearing."

In State v. Ridgway, 178 La. 606, 152 So. 306, the court had under consideration the provisions of Act No. 136 of 1932, which are substantially the same as the provisions of Act No. 261 of 1944 so far as the question now under discussion is concerned. In that case, the defendant, who was convicted and sentenced for burglary, complained of the action of the judge in refusing to appoint a commission of experts to determine his mental condition and in overruling his plea of present insanity. The reason assigned by the judge for his ruling was that "no evidence was submitted or offered which would cause the court to believe defendant might be insane." This court sustained the ruling holding that the question of whether there is reasonable ground to believe defendant presently insane so as to require the appointment of experts to examine him is addressed to the sound discretion of the court and defendant's assertion of insanity, or even affidavits of witnesses, are not necessarily sufficient to create such a belief in the mind of the judge. That reasonable ground to believe defendant is insane can arise in the mind of the judge only when information to that effect is furnished from a trustworthy source, or by credible parties, or when from the inspection or observation by the judge himself, defendant appears to be mentally unbalanced. See, also, State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Hebert, 186 La. 308, 172 So. 167; State v. McManus, 187 La. 9, 174 So. 91; State v. Messer, 194 La. 238, 193 So. 633.

In his per curiam in this case the judge, after stating that the testimony of Mrs. Ellis Hargraves, the mother of defendant, was that her son was not criminally insane, but that he was nervous, had nightmares, was fractious and wanted to fight, announced his ruling on the objection of the State in these words: "The court carefully observed the defendant in the case, saw that he frequently conferred with his counsel, was not apparently mentally ill, and was in full possession of all his faculties and the court thoroughly agreed with his mother that in its opinion he was not insane. For that reason it did not seem justified at that stage of the proceeding to

stop the trial of the case and appoint experts to pass upon the sanity of the defendant, Hargraves. The documents referred to were simply, first, his discharge from the army (should be the navy), and second, a certificate or statement showing that he had been granted compensation by the government. Neither of these documents were relevant or material as to any facts in the case or any facts properly connected with the case. For that reason the objection of the state was sustained."

■ It is elementary that in a criminal prosecution a person can not plead or be tried, or convicted, or sentenced while in a state of insanity. The question of the present insanity of a defendant in a criminal prosecution, although raised during the progress of the trial, must be passed upon by the judge alone and not by the jury passing upon defendant's guilt or innocence. State v. McIntosh, 136 La. 1001, 68 So. 104; State v. Cropper, 153 La. 545, 96 So. 116.

■ The objection of present insanity may be made at any stage of the proceeding. It requires no formal plea and may be presented orally. The judge himself may act from his own observation. In fact, Act No. 261 of 1944, as well as Act No. 136 of 1932 which it amends, imposes the duty on the judge, if before or during the trial, from observation, pleading or suggestion, he becomes cognizant of facts which raise a doubt as to the ability of the defendant, by reason of insanity, to comprehend his position and make his defense, to determine defendant's mental condition before proceeding with the case. State v. Hebert, 186 La. 308, 172 So. 167.

■ Although the objection of defendant's present insanity was not made until the close of the evidence for the State and for the defendant, nevertheless it was not made too late to be considered by the court. While counsel for defendant in a criminal prosecution having reason to believe the defendant is too insane to stand trial should interpose the objection before arraignment, the objection may be interposed after arraignment and at any time during the progress of the trial. Even after conviction, the objection may be made, as a reason why sentence should not be passed. State v. Reed, 41 La.Ann. 581, 7 So. 132.

■ The language of Act No. 261 of 1944 shows that the trial judge is vested with the discretion to determine when there are reasonable grounds to believe that a defendant is presently insane. State v. Ridgway, 178 La. 606, 152 So. 306; State v. Hebert, 186 La. 308, 172 So. 167; State v. Messer, 194 La. 238, 193 So. 633. But where it is shown reasonable grounds exist, the judge must follow the statute. The discretion is a judicial one and if the judge fails to exercise it, or abuses such discretion in an arbitrary manner, his error in so doing will be corrected on appeal. If it were otherwise, the defendant would be deprived of the benefit of the provisions of Act No. 261 of 1944 which prohibit his trial for the offense while he is insane. It will be observed the statute and the decisions thereunder contemplate that the doubt as to defend-

ant's present sanity may arise either from the judge's own observation or from the evidentiary facts presented to the court. When the question is raised by a special plea, or by oral suggestion, as was done in this case, the judge must weigh and consider all the relevant facts bearing thereon, whether offered to sustain the plea of insanity or in opposition thereto. If it appears that the plea and evidence in support thereof is made merely for the purpose of avoiding or delaying the trial on the merits, or if the showing is not from credible sources and substantial, the plea must necessarily fall short of arousing in the mind of the judge any doubt as to defendant's present sanity.

The question now presented to this court is whether there was a sufficient showing to raise a legal doubt of defendant's sanity so as to require a separate trial by the judge of that issue. We are satisfied that the judge, personally, had no doubt of defendant's sanity, yet the evidence on the question is substantial, is not inherently improbable, and is not contradicted.

The record discloses that Hargraves is a young man twenty-three years of age who spent the past six years of his life in the United States Navy, principally in the South Pacific. He was discharged from the Navy by reason of his nervous condition. Upon his discharge, which took place from the Naval Hospital in San Diego, California, in March, 1944, he was awarded compensation based on a thirty per cent disability. On his return home, his family noticed that a great change had taken place in his character. He was restless, could not sleep, was fractious, wanted to fight without provocation, could not hold a job more than a few days, and had a number of them in the short period elapsing between his return home and the alleged commission of the crime for which he is charged. He was arrested and put under a peace bond for threatening to kill his maternal uncle and was also arrested for shooting at two residents of an adjoining parish. All of this was in sharp contrast to his mental condition in 1938, when he entered the Navy. At that time he was a normal young man and his mental condition was good.

Hargraves did not take the witness stand, but the testimony of Mrs. Ellis Hargraves, his mother, is in the record, together with the certificate of his discharge from the naval service and the certificate showing an award of compensation for disability resulting from his nervous condition incurred or aggravated during his service. In addition to this, the evidence shows that arrangements had been made for defendant's admission to the United States Government Hospital for the treatment of mental diseases at Gulfport, Mississippi.

The showing thus made, in the absence of any showing to the contrary, in our opinion, is sufficient to entitle the defendant to the benefit of the statute, and the overruling of his plea of present insanity was tantamount to declaring that the facts which we have recited, if true, do not constitute reasonable grounds for believing the defendant to be presently insane.

In support of his ruling the trial judge merely states that he observed Hargraves during the trial of the case; that he frequently conferred with his counsel and was apparently in full possession of his faculties, and that he thoroughly agreed with defendant's mother in her opinion that defendant was not insane. But, as we read the testimony of Mrs. Hargraves, she did not express the opinion that her son was not insane. Her testimony was to the effect that he was not criminally insane, but that he was mentally sick and needed treatment for his condition and that arrangements for such treatment had been made with the Veterans' Administration in Gulfport, Mississippi.

The question of the mental condition of a person is one on which psychiatrists often disagree after careful examination and observation of a person over a considerable period of time. At most the observation which the trial judge was able to exercise in this case was confined to the short time the defendant was in the courtroom. He simply saw him as he came in and went out of the courtroom and sat beside his attorney during the progress of the trial. As the defendant did not testify as a witness, it is not unreasonable to assume that the judge did not speak to him or hear him speak. The reasons assigned by the judge for his refusal to order a separate hearing on the question of defendant's present insanity can not be justified on the ground that his opportunity to observe the acts and conduct of the defendant was sufficient to enable him to determine whether defendant was sane enough to care for his defense and understand the proceedings against him, in the face of the showing made by the testimony of defendant's mother and the other evidence in the record.

In all those cases in which the request to determine the present insanity of the defendant was denied by the trial judge and affirmed by this Court no such showing was made as has been made in this case.

Our conclusion is that the judge abused his discretion under the facts disclosed by the record and erred in not appointing a lunacy commission and fixing a time for a hearing on the issue of present insanity in accordance with the request of defendant's counsel.

■ Jeff Gunter, on his appeal, complains that the judge refused to sustain his objection to the following remark of the district attorney in his opening statement to the jury: "Counsel for the State wishes to show that agreement was offered with the counsel for the defense to show what each party did and any pertinent statements they made." Standing by itself this statement is meaningless. As stated in the per curiam attached to the bill reserving defendant's objection, that in view of the objections being made to his opening statement, the district attorney merely offered not to make any further statement as to any proof that would be offered if the defendants would not object to the testimony because it was not covered or referred to in the opening statement. The judge expressly instructed the jury that the opening statement of the district attorney was not evidence, and that the jury

should disregard anything said in the opening statement which was not later proved or admitted in evidence. Defendant's complaint is not well-founded.

[14] W. R. Ford, the prosecuting witness, was asked on cross-examination the following question: "At the time you saw Henry Murray in the Rapides Parish jail, had you not been told by the officers that Henry Murray had made a confession?"

The State objected to the question on the ground that it called for hearsay testimony. The judge maintained the objection. The witness was further asked on cross-examination the following question: "Were you told at the time that Henry Murray had been arrested on other charges?"

The State objected to the question on the ground that it was hearsay, irrelevant and immaterial. The judge also maintained this objection. Defendant is complaining of the rulings. There is no merit in his complaint. The rulings were correct. The questions called for unsworn statements made to the witness by certain third persons and not for any facts within his personal knowledge. The evidence was clearly hearsay and irrelevant and immaterial.

Henry Murray, who had been jointly charged with Gunter and Hargraves and had pleaded guilty, was used as a state witness. On direct examination he was asked the following questions:

"Who advanced this plan for kidnapping Ford and outlining what should be done between the three of you?"

"How long had the three of you been planning on pulling this job?"

Defendant objected to the questions on the ground that a proper foundation had not been laid for the introduction of any testimony as to the forming of a conspiracy between the witness and anyone else. The objection was overruled and the witness was permitted to answer the questions. The judge, in a lengthy per curiam, after reciting the facts showing Jeff Gunter's connection with the crime and holding they were ample to serve as a foundation for asking the questions, further held that the defendants were not being prosecuted for a conspiracy to commit the offense of kidnapping under Article 26 of the Criminal Code, but were being prosecuted for the offense of simple kidnapping under Article 45 of the Code on the theory that, under Article 24 of the Code, they were principals in the commission of the crime.

Under Article 26 of the Criminal Code, conspiracy is a separate and distinct offense from the completed crime. So much is this the case that a conviction for conspiracy will not bar a conviction for the completed crime and vice versa.

As stated by the judge in his per curiam, under Article 24 of the Criminal Code, all persons concerned in the commission of a crime are regarded as principals. The defendants in this case were jointly charged with the offense of simple kidnapping under Article 45 of the Criminal Code. They were charged as principals and not as conspirators. Murray was an accomplice in the crime, and his testimony consisted merely of a recital of the various acts done by each defendant in the perpetration of the crime.

■ An accomplice is strictly defined as one who is associated with others in the commission of a crime. He is a competent witness, either for the State or for the defense, whether he has been convicted or not, or whether he has pleaded guilty, or a nolle prosequi entered as to him, or whether he be or be not joined in the same indictment with the prisoner to be tried, provided he is not put on his trial at the same time. His being an accomplice affects his credibility only, of which the jury is to judge, subject to no review on appeal. Connection with the crime and inducements held out to the accomplice by the prosecution to obtain his testimony merely affect his credibility. Marr's Crim.Jur., Vol. II, sec. 602, p. 931.

Defendant filed a written request for a written charge and also a written request for the following special charges:

"I charge you, gentlemen of the jury, that mere cognizance of fraudulent or illegal action does not constitute a conspiracy, but there must be shown active participation by the parties charged."

"That the testimony of an accomplice is to be received with suspicion and acted upon with great caution."

"That when the common enterprise is abandoned by one of the conspirators, that no other conspirator by his acts or actions is permitted to affect the others."

"That in order for the acts and declarations of a conspirator to be admissible against a co-conspirator, the State must prove that the conspiracy is formed or existed and that the accused against whom it is sought to employ such evidence was connected with such conspiracy and crime charged."

"That the admissibility of the acts and declarations of co-conspirators against other members of the conspiracy is limited to those acts and declarations which are pursuant to and in furtherance of the unlawful combination or crime charged."

■ The judge gave his charge to the jury in writing, but he did not give to the jury the special charges requested by the defendant. The judge assigns as his reason for refusing to give the special charges that they were covered in part by his general charge and were otherwise not applicable to the facts in the case. His ruling was correct. Since the defendants were not charged and prosecuted for conspiring to commit the offense of simple kidnapping, but were charged and prosecuted for the basic offense of simple kidnapping, the instructions requested by defendant relative to conspiracy were not applicable to the case. The judge, in his general charge, did instruct the jurors that it was their right "to accept as true or reject as false the testimony of any witness, accordingly as you are impressed with his veracity," and that: "The testimony of an accomplice should be received with caution."

Defendant does not argue the bill of exception reserved to the action of the judge in overruling his motion for a new trial, which is a mere repetition of the alleged errors set forth in the other bills of exception.

For the reasons assigned, the conviction and sentence of the defendant, Jeff Gunter, is affirmed; the conviction and sentence of the defendant, Wilson Hargraves, is annulled and the case as to him is remanded to the district court for further proceedings consistent with the views herein expressed.